UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TAMEICA BAKER, *et al.* | CIVIL ACTION |
| VERSUS | NO. 23-3991 |
| AMAZON LOGISTICS, INC., *et al.* | SECTION M (2) |

## ORDER & REASONS

Before the Court is a motion filed by plaintiffs Tameica Baker, Alrick Baker, Jr., Kalila Baker,[1] and Shushana Edwards[2] (collectively, "Plaintiffs") to remand this matter to the 24th Judicial District Court, Parish of Jefferson, State of Louisiana.[3]  Defendant Justin Walker responds in opposition,[4] and Plaintiffs reply in further support of their motion.[5]  Having considered the parties' memoranda, the record, and the applicable law, this Court issues this Order & Reasons denying Plaintiffs' motion to remand.

## I.      BACKGROUND

This matter involves a claim against multiple defendants arising out of a car accident eventuating in the death of Alrick Baker ("Baker").  On June 5, 2023, on Interstate 10 in Biloxi, Mississippi, Baker's vehicle was struck when an Amazon Logistics, Inc. ("Amazon") tractor-trailer, driven by defendant Cynthia Kirksey, attempted to pass him.[6]  As a result of the collision,

---

[1] Tameica Baker, Alrick Baker, Jr., and Kalila Baker appear individually and on behalf of the decedent, Alrick Baker, who was Tameica's husband and Alrick, Jr. and Kalila's father.
[2] Shushana Edwards brings claims on behalf of her minor children, who are also Alrick Baker's children.
[3] R. Doc. 8.
[4] R. Doc. 13.
[5] R. Doc. 16.
[6] R. Doc. 2-3 at 9 (¶ 41).

Baker's vehicle was forced off the roadway and burst into flames, which caused significant burns to his body and ultimately led to his death.[7]

Plaintiffs brought this action in state court seeking damages for Baker's death.[8]  Plaintiffs assert that the accident was caused by Amazon's negligence in failing to adhere to its obligations and duties under the law and its contract with B3 Logistics, LLC ("B3").[9]  In addition to naming the Amazon entities,[10] Plaintiffs sued B3, Brian Davis, Kirksey, Ontime Carriers, LLC ("Ontime"), Lancer Insurance Company ("Lancer"), Prime Insurance Company ("Prime Insurance"), Great American Assurance Company ("Great American"), Mohave Transportation Insurance Company ("Mohave"), and five individual Amazon employees (the "Amazon Supervisors"): Walker, Michael Davis, Murzuka Afrida, Renee Mota, and Germaine White.[11] Plaintiffs' petition recites the following allegations regarding the Amazon Supervisors' liability:

> AMAZON SUPERVISORS had a duty to ensure that employees were trained and supervised correctly; instructed on policy and procedure and to prevent unauthorized removal of AMAZON equipment.[12]

> AMAZON SUPERVISORS breached this duty which such breach was a legal cause and cause in fact of the injuries and damages to Petitioners.[13]

> AMAZON SUPERVISORS committed the following non-exclusive acts of negligence to-wit:
> a) Failure to prevent unauthorized individuals/entities from retrieving AMAZON equipment;
> b) Failure to train those working in the facility on proper procedure;
> c) Failure to supervise those working in the AMAZON facility;
> d) Failure to properly secure the AMAZON facility;
> e) Failure to ensure all those working in the AMAZON facility were properly versed on obligations;

---

[7] *Id.* at 10.
[8] *Id.* at 3-20.
[9] *Id.* at 11.
[10] Plaintiffs sued Amazon.com, Inc., as well as Amazon.  *Id.* at 4.
[11] *Id*. at 4-6.
[12] *Id.* at 11-12 (¶ 54).
[13] *Id.* at 12 (¶ 55).

f)  Personally failing to inspect, secure or otherwise prevent equipment from leaving unauthorized;

g)  Personally failing to adhere to their duties as supervisors of AMAZON by creating, implementing and asserting improper polices which led to KIRSKEY and ONTIME'S unauthorized activity;

h)  Plaintiffs specifically plead that these individuals had an independent duty and that their actions in breaching that duty was a cause in fact of the injuries to Petitioners[;]

i)  But for the individual actions of the AMAZON SUPERVISORS the plaintiffs would not have sustained damages;

j)  The AMAZON supervisors were either present at the site when the unauthorized transferred [*sic*] occurred or were in the chain of command and responsible and had control of the release of the trailer to prevent same from occurring;

k)  Plaintiffs plead the independent negligence of each of these supervisors separate and apart from their vicarious liability as employees of AMAZON; and

l)  Petitioners aver that the AMAZON SUPERVISORS also committed violations of law inherent in these pleadings or which may appear through discovery in violation of law[.][14]

At all material times, the AMAZON SUPERVISORS were direct employees of AMAZON, were conducting the business of AMAZON, were being paid by AMAZON, and were in the furtherance of the business of AMAZON and hence AMAZON is vicariously liable for the actions and inactions of the AMAZON SUPERVISORS and petitioners also plead the theory of respondeat superior.[15]

On June 15, 2023, Amazon removed the action to this Court on the basis of a diversity of citizenship and an amount in controversy exceeding $75,000, exclusive of interest and costs.[16]  In its notice of removal, Amazon contended that the Amazon Supervisors' citizenship should not be considered in determining diversity jurisdiction because, as employees of Amazon, none can be personally liable to Plaintiffs.[17]  Thus, according to Amazon, Baker improperly joined the Amazon Supervisors (who were alleged to be Louisiana citizens[18]) to defeat federal diversity subject-matter

---

[14] *Id.* (¶ 56).
[15] *Id.* at 12-13 (¶ 57).
[16] *Id.* at 64-74; *see Baker, et al. v. Amazon Logistics, Inc., et al.*, No. 23-2078 (E.D. La.), R. Doc. 4.
[17] R. Doc. 2-3 at 71.
[18] *Id.* at 70-71.

jurisdiction.[19]   Plaintiffs then filed a motion to remand,[20] which the Court granted on June 26, 2023, upon finding that only two of the four properly joined and served non-removing defendants had timely consented to removal. [21]   Because the Court remanded the case back to state court on this procedural ground, it did not address whether the Amazon Supervisors were properly joined.[22]

Following the remand of Amazon's removal, Walker, on August 23, 2023, removed the action to this Court, again on the basis of a diversity of citizenship and an amount in controversy exceeding $75,000, exclusive of interest and costs.[23]   In the notice of removal, Walker takes the same position Amazon previously did in its notice of removal but which was not addressed by the Court in the prior remand – namely, that the Amazon Supervisors are improperly joined and thus their citizenship should be disregarded for jurisdictional purposes.[24]   Thereafter, Plaintiffs filed the instant motion to remand.[25]

## II.    PENDING MOTION

Plaintiffs argue that Walker, as a nondiverse, forum defendant, could not remove this case claiming improper joinder.[26]   Alternatively, Plaintiffs argue that, even if Walker could remove the case, the necessary consents to removal were not obtained and filed.[27]   Lastly, Plaintiffs argue that, even if removal was procedurally proper, the Court lacks subject-matter jurisdiction over the case because the Louisiana defendants are properly joined.[28]

---

[19] *Id.* at 71.
[20] No. 23-2078, R. Doc. 12 at 1-2.
[21] R. Doc. 2-3 at 107-19.  The four properly joined and served non-removing defendants were Lancer, Brian Davis, Prime Insurance, and Great American.
[22] *Id.* at 113 n.34.
[23] R. Doc. 2 at 5-6.
[24] *Id.* at 7-9.  However, in his notice of removal (in contrast to Amazon's), Walker alleges that one of the four Amazon Supervisors (Afrida) is not a citizen of Louisiana, but he still acknowledges that he, Michael Davis, Mota, and White are citizens of Louisiana.  *Id.* at 5.
[25] R. Doc. 8.
[26] R. Doc. 8-1 at 2-3.
[27] *Id.* at 6.
[28] *Id.* at 8.  Plaintiffs also contend that removal is Amazon's "end around to discovery," because Walked filed the notice of removal the day Plaintiffs sent a motion to compel to the state court.  *Id.* at 7-8.

4

In opposition, Walker first argues that the Plaintiffs' complaint does not state any valid claims against the Amazon Supervisors and therefore their citizenship should be disregarded for jurisdictional purposes.[29]  Specifically, Walker argues that Plaintiffs do not allege that Amazon owed a duty to Baker that it delegated to the Amazon Supervisors, and that Plaintiffs fail to allege precisely who released the trailer to Kirksey (and thus who breached the alleged duty).[30]  Walker next argues that, even though he is a nondiverse, forum defendant, he is not prohibited from removing the case on the basis that he and other nondiverse, forum defendants were improperly joined.[31]  Finally, Walker maintains that he obtained all the necessary consents to removal.[32]

In reply, Plaintiffs reiterate the arguments made in the motion, including that the Amazon Supervisors are properly joined.[33]  They again argue that a forum defendant claiming improper joinder cannot remove a case, insisting that the cases they have cited on this issue are more relevant than those cited by Walker.[34]  And Plaintiffs reurge Walker's noncompliance with the "rule of unanimity," asserting that he did not file the necessary consents from all defendants within the applicable 30-day window.[35]

## III.   LAW & ANALYSIS

### A.  Removal Standard

A defendant may remove from state court to the proper United States district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  "A federal district court has subject matter jurisdiction over a state claim when the amount in controversy is met and there is complete diversity of citizenship

---

[29] R. Doc. 13 at 3-4.
[30] *Id.* at 5-9.
[31] *Id.* at 9-13.
[32] *Id.* at 13-18.
[33] R. Doc. 16 at 5-9.
[34] *Id.* at 2-3.
[35] *Id.* at 4-5.

between the parties." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing 28 U.S.C. § 1332(a)).  Because federal courts have only limited jurisdiction, the removal statute is strictly construed, and any doubts or ambiguities are resolved against removal and in favor of remand.  *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  The party seeking removal has the burden of establishing "that federal jurisdiction exists and that removal was proper." *Manguno*, 276 F.3d at 723.

### B. Rule of Unanimity

Procedural requirements for removal are set forth in 28 U.S.C. § 1446(b).  To remove a case, a defendant must file a notice of removal within 30 days of service on the defendant.  *Id.* § 1446(a)-(b)(1).  All defendants who have been "properly joined and served" must join in or consent to the removal of the action.  *Id.* § 1446(b)(2)(A).  According to the Fifth Circuit, this "rule of unanimity" requires that each served defendant join in the notice of removal or that there be a "timely filed written indication from each served defendant, or from some person or entity purporting to formally act on its behalf in this respect and to have authority to do so, that it has actually consented to such action." *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262 (5th Cir. 1988).  District courts in the Fifth Circuit "have consistently remanded cases where a notice of removal included only an allegation of consent of a defendant not joining in the notice of removal." *McFarland v. Protective Ins. Co.*, 2019 WL 351150, at *2 (E.D. La. Jan. 29, 2019) (citing *Spoon v. Fannin Cnty. Cmty. Supervision & Corr. Dep't*, 794 F. Supp. 2d 703, 707 (E.D. Tex. 2011) (collecting cases)).

The Fifth Circuit has recognized three exceptions to the rule of unanimity: (1) non-removing defendants who are improperly or fraudulently joined; (2) non-removing defendants who

are merely nominal or formal parties; and (3) non-removing defendants who have not been served by the time of removal. *Wagner v. Gov't Emps. Ins. Co.*, 2019 WL 626430, at *3 (E.D. La. Feb. 14, 2019) (citing Fifth Circuit decisions); *World Prayer Tabernacle v. Certain Underwriters at Lloyd's*, 2022 WL 4949125, at *1 (E.D. La. Oct. 4, 2022). And it has also "recognized that 'sometimes exceptional or unique circumstances might permit removal after the expiration of the thirty-day period prescribed by § 1446(b).'" *Cavalier v. Progressive Paloverde Ins. Co.*, 2021 WL 4772108, at *2 (E.D. La. Oct. 12, 2021) (quoting *Ortiz v. Young*, 431 F. App'x 306, 307 (5th Cir. 2011)). This additional exception has only been granted by the Fifth Circuit in the "unique" case of *Gillis v. Louisiana*, 249 F.3d 755 (5th Cir. 2002), in which "the non-removing defendant did not file its written consent in thirty days because consent could be authorized only at a board meeting, and the plaintiff, who was also the chairman of the board, had interposed scheduling conflicts that prevented timely consent." *Cavalier*, 2021 WL 4772108, at *2. Such "exceptional circumstances" will generally be found, then, only when the non-removing defendant's "lack of timely consent arises from plaintiff's conduct, such as plaintiff's 'bad faith efforts to prevent removal.'" *Id.* (quoting *Ortiz*, 431 F. App'x at 307-08). Thus, the Fifth Circuit has instructed district courts to consider the reasonableness of the removing defendant's actions and whether the circumstances (*e.g.,* plaintiff's conduct) were sufficiently "exceptional" to justify a departure from the rule of unanimity. *Getty*, 841 F.2d at 1263.

### C. Improper Joinder

Section 1441(b)(2) permits a defendant to "remove a case from state court to federal court on the basis of diversity jurisdiction so long as none 'of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'" *Wolf v. Deutsche Bank Nat'l Tr. Co. for Am. Home Mortg. Inv. Tr. 2007-1*, 745 F. App'x 205, 207 (5th Cir. 2018)

(quoting 28 U.S.C. § 1441(b)(2), and citing *Alviar v. Lillard*, 854 F.3d 286, 289 (5th Cir. 2017)).

However, the lack of complete diversity will not render an action non-removable if a party has

been improperly joined.  *Id.*  Instead, if a "plaintiff improperly joins a non-diverse defendant, …

the court may disregard the citizenship of that defendant, dismiss the non-diverse defendant from

the case, and exercise subject matter jurisdiction over the remaining diverse defendant." *Flagg v.

Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016).  The defendant can demonstrate improper joinder

by showing either (1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the

plaintiff to establish a cause of action against the nondiverse defendant in state court.  *Mumfrey*,

719 F.3d at 401.  The improper joinder doctrine is a "'narrow exception' to the rule of complete

diversity, and the burden of persuasion on a party claiming improper joinder is a 'heavy one.'"

*Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (citing *McDonal v. Abbott Labs.*,

408 F.3d 177, 183 (5th Cir. 2005)).  "Under the second prong (inability to establish a cause of

action), the court must determine whether 'there is arguably a reasonable basis for predicting that

state law might impose liability.'"  *Id.* (quoting *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th

Cir. 2003)).  "This means that there must be a *reasonable* possibility of recovery, not merely a

*theoretical* one."  *Ross*, 344 F.3d at 462 (emphasis in original).  "[T]he existence of even a single

valid cause of action against in-state defendants (despite the pleading of several unavailing claims)

requires remand of the entire case to state court." *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*,

390 F.3d 400, 412 (5th Cir. 2004).

In *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568 (5th Cir. 2004), the Fifth

Circuit explained the procedure used by courts to determine whether a plaintiff has improperly

joined a nondiverse defendant.  A court first looks "at the allegations of the complaint to determine

whether the complaint states a claim under state law against the in-state defendant," and

"[o]rdinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id.* at 573.  However, if "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder ... the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.*  The Fifth Circuit "caution[ed] that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74.  In conducting such an inquiry, the district court may "consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003).  Further, "[a]ny contested issues of fact and any ambiguities of state law must be resolved in [the plaintiff's] favor." *Id.*

### D.  Analysis

#### 1.  The Amazon Supervisors are Improperly Joined

Plaintiffs allege that the Amazon Supervisors are liable for their damages.  "The circumstances under which a corporate officer or employee can be held individually liable for injuries to third persons under Louisiana law were explained in *Canter v. Koehring Co.*, 283 So. 2d 716 (La. 1973)." *Ford v. Elsbury*, 32 F.3d 931, 935-36 (5th Cir. 1994).  The Louisiana Supreme Court "recognized that liability may be imposed on such individuals where the duty breached arises solely because of the employment relationship," *id.* at 936, if the following four criteria are met:

1. The employer owes a duty of care to the plaintiff and the breach of that duty caused plaintiff's injury;
2. The duty is delegated by the employer to the defendant employee;
3. The defendant employee has breached this duty through personal (as contrasted with technical or vicarious) fault, including the failure to remedy a risk the employee knew or should have known about; and

4. Personal liability cannot be imposed upon the employee simply because of his general administrative responsibility for performance of some function of employment; rather, he or she must have a personal responsibility creating a duty to the plaintiff that was not delegated to some other employee. If that responsibility was delegated to another employee, the defendant is not liable for its breach unless he or she knows or should know of its non-performance or mal-performance and still fails to remedy the risk of harm.

See *Canter*, 283 So. 2d at 721; *Ford*, 32 F.3d at 936.  In other words, in order to hold the Amazon Supervisors liable, Plaintiffs "must demonstrate that [the Amazon Supervisors] breached an independent, personal duty" to them.  *Black v. Lowe's Home Ctrs., Inc.*, 2010 WL 4790906, at *2 (M.D. La. Oct. 22, 2010), *adopted*, 2010 WL 4789165 (M.D. La. Nov. 17, 2010).  Courts, applying the *Canter* test, have often denied motions to remand on the basis of improper joinder, finding that the plaintiff sought to impose liability based on an employee's general administrative duties, rather than a personal duty.  *See, e.g.*, *Gros v. Warren Props., Inc.*, 2012 WL 5906724, at *9 (E.D. La. Nov. 26, 2012) (collecting cases); *Giles v. Wal-Mart La. LLC*, 2016 WL 2825778, at *4 (E.D. La. May 13, 2016) (holding that a store manager was improperly joined and that this was "'a classic case of attempting to place liability upon an employee simply because of his general administrative responsibility for performance of some function of employment'") (quoting *Rushing v. Wal-Mart Stores, Inc.*, 2015 WL 1565064, at *4 (E.D. La. Apr. 8, 2015)); *Vallee v. Crown Equip. Corp.*, 2020 WL 8265340, at *4 (E.D. La. Nov. 10, 2020) (dismissing negligent-training/supervision claims of an injured employee against a co-employee for failure to allege a delegated duty, breach through personal fault, or that the duty fell outside the scope of the co-employee's general administrative responsibilities).

Applying the *Canter* criteria to the present matter, Plaintiffs first must have alleged a duty owed by the employer (Amazon) to Plaintiffs and that the breach of the duty caused their injury. In the petition, Plaintiffs allege that "AMAZON … had a duty to ensure that those retrieving cargo were authorized, under contract and had permission to remove items from its facility.  This was

also a policy and requirement of AMAZON.  AMAZON breached this legal duty which such cause was a legal cause and cause in fact of injuries/damages to your petitioners[.]"[36]

Next, Plaintiffs must have alleged that the duty was delegated by Amazon to the Amazon Supervisors.  They have failed to do this.  Nowhere in the petition do Plaintiffs state that Amazon delegated to the Amazon Supervisors its duty to ensure that those retrieving cargo were authorized to do so.  *See Lundy v. ACE Am. Ins. Co.*, 2023 WL 3730295, at *5 (M.D. La. May 30, 2023) ("While Plaintiff alleges that Goldman was 'the manager on duty and/or employee who was responsible for the facility,' she does not identify any specific duties of care owed to plaintiff that were delegated by the DG entities to Goldman with respect to the maintenance and safety of the premises.  Accordingly, Plaintiff cannot establish that the second element of *Canter* is satisfied, namely that the DG entities delegated to Goldman any personal duties of care owed to Plaintiff.") (internal citation omitted).   And, in fact, Plaintiffs have alleged a separate and distinct duty owed by the Amazon Supervisors: "AMAZON SUPERVISORS had a duty to ensure that employees were trained and supervised correctly; instructed on policy and procedure and to prevent unauthorized removal of AMAZON equipment."[37]   While Amazon's alleged duty involves ensuring that the correct, authorized individuals were retrieving the cargo, the Amazon Supervisors' alleged duty involves the training, supervision, and instruction of the employees on this score.

Even if Plaintiffs had satisfied the second *Canter* element, Plaintiffs fail to satisfy the later elements.  The third element requires Plaintiffs to allege that the Amazon Supervisors breached

---

[36] R. Doc. 2-3 at 11 (¶¶ 50-51).
[37] *Id.* at 11-12 (¶ 54).

the stated duty through personal (not technical or vicarious) fault.   A breach of duty through personal fault occurs when:

> the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances – whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.

*Ford*, 32 F.3d at 936.  "As a general rule, allegations of a failure to maintain premises and to warn of a vice and/or defect in same have been repeatedly held to be insufficient to impose personal liability on managers under the *Canter* factors."  *Dubroc v. Brand Energy Sols., LLC*, 2009 WL 2194551, at \*3 (M.D. La. June 1, 2009), *adopted*, 2009 WL 1886123 (M.D. La. June 30, 2009).

Here, the only allegations about the Amazon Supervisors' personal fault are Plaintiffs' conclusory allegations that the Amazon Supervisors "personally fail[ed] to inspect, secure or otherwise prevent equipment from leaving unauthorized" and "personally fail[ed] to adhere to their duties as supervisors of AMAZON by creating, implementing and asserting improper polices which led to KIRSKEY and ONTIME'S unauthorized activity."[38]  However, Plaintiffs have not alleged which of the supervisors released the trailer to Kirksey.  Instead, they allege that "[t]he AMAZON supervisors were either present at the site when the unauthorized transfer[] occurred or were in the chain of command and responsible and had control of the release of the trailer to prevent same from occurring."[39]  Merely being present at the site or being in the chain of command does not show personal fault.  Plaintiffs have not alleged either any personal knowledge on the

---

[38] *Id.* at 12 (¶ 56).
[39] *Id.*

12

part of the Amazon Supervisors, or any specific, personal act by any of the Amazon Supervisors, that led to the accident.  *See Vallee*, 2020 WL 8265340, at *4.

Further, as regards the fourth *Canter* element, Plaintiffs do not allege any specific facts to establish that the Amazon Supervisors owed them a personal duty outside the general administrative responsibilities of their employment.  Plaintiffs make the following allegations regarding the duties owed by the Amazon Supervisors:

> AMAZON SUPERVISORS had a duty to ensure that employees were trained and supervised correctly; instructed on policy and procedure and to prevent unauthorized removal of AMAZON equipment.[40]

> AMAZON SUPERVISORS breached this duty which such breach was a legal cause and cause in fact of the injuries and damages to Petitioners.[41]

> Plaintiffs specifically plead that these individuals had an independent duty and that their actions in breaching that duty was a cause in fact of the injuries to Petitioners[.][42]

First, plaintiff cannot simply rely on a recitation of the *Canter* elements to defeat dismissal.  *See Perkins v. Sheffield Rentals, Inc.*, 2022 WL 3702932, at *4 (W.D. La. Aug. 12, 2022), *adopted*, 2022 WL 3702915 (W.D. La. Aug. 26, 2022).   In *Perkins*, the plaintiffs alleged that certain defendants had a "personal duty delegated to them by their employers" and "were aware or should have been aware of the risk of harm and nevertheless failed to respond to the risk in a manner in which a reasonably prudent person would respond in the same o[r] similar circumstances."  *Id.* However, the plaintiffs did not allege any facts to support these allegations.  Accordingly, the court concluded that the plaintiffs "failed to allege any specific facts to support [their] recitation of the *Canter* elements, offering only conclusory allegations that these factors are met in this case."  *Id.* As in *Perkins*, Plaintiffs fail to allege any specific facts to support their recitation of the *Canter*

---

[40] *Id.* at 11-12 (¶ 54).
[41] *Id.* at 12 (¶ 55).
[42] *Id.* (¶ 56).

elements, including the fourth element.  Second, a failure to train or supervise other employees has repeatedly been held to fall within the ambit of an employee's general administrative responsibilities for performing a function of employment, as not to satisfy *Canter*'s fourth element. *See, e.g.*, *Vallee*, 2020 WL 8265340, at *4-5 (discussing *Carter v. Wal-Mart Stores, Inc.*, 2005 WL 1831092, at *1-3 (W.D. La. July 28, 2005)).

In sum, Walker has carried his burden of demonstrating that Plaintiffs cannot prevail on their claims against the Amazon Supervisors.  As a result, the Court finds that the Amazon Supervisors are improperly joined and must be disregarded.  Because the properly joined defendants are completely diverse from Plaintiffs, it appears that subject-matter jurisdiction over this matter exists – unless Plaintiffs' remaining procedural arguments (or facts left to be determined) establish that removal was improper.

## 2.  Justin Walker Properly Removed the Case

Walker, a citizen of Louisiana, removed the case to this Court before being served with process.  His removal implicates two procedural rules – the forum-defendant rule and the rule of unanimity – that Plaintiffs contend are not satisfied and thus, in their view, should lead to a second remand.

### a.  Walker, as an unserved, forum defendant, may remove the case even if improperly joined.

Under 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  Subsection (b)(2) of the statute, known as the forum-defendant rule, states that "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).  In other words, properly joined and served

defendants that are citizens of the forum state may not remove an otherwise removable diversity action.

Defendants may overcome the forum-defendant rule by employing snap removal. "Snap removal" refers to the practice of removing an action to federal court on diversity grounds after a complaint has been filed but before a forum defendant has been served. *See Texas Brine Co., v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 485-86 (5th Cir. 2020); *Breitweiser v. Chesapeake Energy Corp.,* 2015 WL 6322625, at *2-3 (N.D. Tex. Oct. 20, 2015). It is "a procedure that seizes on § 1441's 'properly ... served' language to remove an action before a defendant who is a resident of the forum state has been served." *Molina v. B2B Xpress Inc.*, 2023 WL 5090819, at *2 (W.D. Tex. Aug. 9, 2023); *see also Texas Brine*, 955 F.3d at 486 ("'By its text, then, Section 1441(b)(2) is inapplicable until a home-state defendant has been served in accordance with state law; until then, a state court lawsuit is removable under Section 1441(a) so long as a federal district court can assume jurisdiction over the action.'") (quoting *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019)).

In *Texas Brine*, the Fifth Circuit upheld the right of a *non-forum* defendant to remove a case to federal court prior to the forum defendant's being served. 955 F.3d at 484. In that case, an out-of-state plaintiff brought suit in Louisiana state court against one out-of-state defendant and two in-state defendants. The out-of-state defendant was served with process and immediately removed the case to federal court before either in-state defendant was served. The plaintiff moved to remand the case. The district court held that the removal was proper, and the Fifth Circuit affirmed, holding that "[a] non-forum defendant may remove an otherwise removable case even when a named defendant who has yet to be 'properly joined and served' is a citizen of the forum state." *Id.* at 487.

15

The present matter involves a slightly different situation than that involved in *Texas Brine*. Here, a *forum* defendant employed snap removal to remove a case before *he* was served with process. While the Fifth Circuit has not addressed this scenario, district courts within the Fifth Circuit, including other sections of this court, have done so, holding that, under § 1441(b)(2), an unserved, forum defendant may remove a case to federal court as long as no properly joined forum defendant has been served. *See, e.g.*, *Baele v. Univ. Healthcare Sys., L.C.*, 2023 WL 4882818, at *2 (E.D. La. Aug. 1, 2023) ("This Court agrees with the reasoning and analysis of its fellow Fifth Circuit district courts that the text of Section 1441(b)(2) permits a forum defendant who has not been 'properly joined and served' to remove an action under Section 1441(b)(2), and that such a reading of the Section does not lead to an absurd result."); *Hvamstad v. Nat'l Interstate Ins. Co.*, 2022 WL 17086690, at *3 (W.D. La. Nov. 3, 2022) ("[I]n the wake of *Texas Brine*, district courts within the Fifth Circuit – including this Court – have repeatedly held that a forum defendant may remove a case to federal court as long as no forum defendant has been served.") (footnote omitted), *adopted*, 2022 WL 17085936 (W.D. La. Nov. 18, 2022).

For example, in *Chastain v. New Orleans Paddlewheels, Inc.*, 2021 WL 5578443, at *4 (E.D. La. Nov. 30, 2021), another section of this court addressed "whether a forum-defendant can snap remove a proceeding to federal court prior to service." In that case, an out-of-state defendant brought suit in Louisiana against a Louisiana defendant. Before the defendant was served with process, it removed the case, and the plaintiff then sought to remand the case to state court. The district court, relying on the plain text of § 1441(b)(2) and the reasoning in *Texas Brine*, stated:

> Giving meaning to each word in the text, the Court finds that Defendant was not "properly joined and served" as a defendant. Indeed, the parties have stipulated that Defendant's agent of service was not served. …
>
> … The Fifth Circuit has upheld the right of a defendant to remove a case to federal court prior to formal service. The Court also notes that the Fifth Circuit's decision in *Texas Brine* relied upon case law that allowed forum defendants to snap remove

cases to federal court.  This Court has determined that the text of 28 USC § 1441(b)(2) is unambiguous.  Applying the text as written by Congress, and since the sole defendant – which happens to be a forum defendant – was not properly served, removal was procedurally proper.

*Id.* at *5 (footnotes omitted).

Here, Walker is an unserved, forum defendant who has employed an unusual instance of snap removal.  What makes it unusual is its timing.  The adjective "snap" connotes an element of quick action, but Walker's removal was filed three months after the suit was first filed and, then, only after a failed removal by a non-forum co-defendant.  Hardly a snap, except in the critical sense that Walker's removal occurred before service was made on any properly joined forum defendant.[43]  Consequently, for the same reasons stated in *Chastain* and *Texas Brine*, this Court finds that Walker's removal – as that of an unserved, forum defendant – was proper.

---

[43] Two points, however, must be noted in this regard.  First, other forum defendants were served before removal (*e.g.*, Michael Davis, Mota, and White), but they are ignored for purposes of the § 1441(b)(2) analysis because, as Amazon Supervisors, they, like Walker, were not properly joined.  Second, the record contains no proof that B3 was served before Walker's removal of the case, so it, too, is appropriately ignored in applying the forum-defendant rule.  But because subject-matter jurisdiction is never waived, B3's citizenship could make the case non-removable if B3 were a citizen of either Louisiana or Florida.  The record is devoid of a clear indication of B3's citizenship.  In the complaint, B3 is alleged to be "a foreign limited liability company authorized to do and doing business in the Parish of Jefferson, State of Louisiana."  R. Doc. 2-3 at 5 (¶ 15).  In the notice of removal, Walker alleges, "on information and belief," that B3 is "a citizen of Alabama" because it is "organized under the laws of Alabama … with its principle [*sic*] place of business in Alabama."  *Id.* at 70.  Where "jurisdiction depends on citizenship, citizenship must be '*distinctly* and *affirmatively* alleged.'"  *Getty Oil*, 841 F.2d at 1259 (quotation omitted; emphasis in original).  Though the state of incorporation and principal place of business are sufficient jurisdictional facts to establish a corporation's citizenship, *see* 28 U.S.C. § 1332(c)(1), B3 is alleged to be a limited liability company ("LLC").  The Fifth Circuit has held that the citizenship of an LLC "is determined by the citizenship of all its members."  *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079-80 (5th Cir. 2008).  If the members are themselves partnerships or LLCs, the citizenship of those entities must be alleged in accordance with the rules applicable to that type of entity, and the citizenship must be traced through however many layers of members or partners there may be to individuals or corporations.  *Mullins v. TestAmerica Inc.*, 564 F.3d 386, 397-98 (5th Cir. 2009).  Thus, B3's citizenship is not clear from the pleadings, and consequently, the existence of federal diversity subject-matter jurisdiction is still in question, notwithstanding the denial of Plaintiffs' instant motion to remand.  Therefore, the remaining defendants are hereby ORDERED TO SHOW CAUSE why this matter should not be dismissed due to the absence of diversity under 28 U.S.C. § 1332.  They shall have **14 days** from the date of entry of this order to submit: (1) a response to this show-cause order adequately alleging the identity of all the members of B3 and the state of citizenship of each member as of the date of filing of the complaint, tracing citizenship through however many layers of members or partners to individuals or corporations; and (2) if appropriate, a motion for leave, pursuant to 28 U.S.C. § 1653, to amend the jurisdictional allegations of the notice of removal to adequately allege diversity subject-matter jurisdiction.

Plaintiffs raise the additional argument that a forum defendant cannot remove a case when asking that he be ignored under § 1441(b)(2) as improperly joined, citing *Andrews v. Amerco*, 920 F. Supp. 2d 696 (E.D. La. 2013), *Canyon Supply & Logistics, LLC v. Max Financial, LLC*, 2013 WL 2189956 (S.D. Tex. May 20, 2013), and *Beechum v. Anointed Touch, Inc.*, 2022 WL 538968, at *1 (E.D. Tex. Jan. 18, 2022), for support.  However, these cases either do not hold what Plaintiffs state they hold, or they are distinguishable.

While the *Andrews* court did indicate its lean on whether a non-diverse defendant may remove a case alleging improper joinder, its basis for remanding the case was that the diverse party was not improperly joined:

> If U-Haul Co. of Louisiana was the removing party, its ability to do so as a non-diverse party is doubtful.  However, because of the absence of definitive case law on this issue, the Court has reviewed whether U-Haul Co. of Louisiana was properly joined, because if it was, this Court would lack subject matter jurisdiction regardless of the propriety of the notice of removal.  After consulting the relevant case law on this issue and examining the allegations in the petition, the Court finds that U-Haul Co. of Louisiana was not fraudulently or improperly joined, and as a result diversity does not exist.  Therefore, this Court is without subject matter jurisdiction to hear this matter.

920 F. Supp. 2d at 705.  Likewise, in *Canyon Supply*, the court intimated that a non-diverse defendant may not remove a case alleging its own improper joinder, but the court ultimately based its remand on the removing defendants' failure to show that they were improperly joined.[44]  2013 WL 2189956, at *1-2.  In *Beechum*, the removing party did not even allege improper joinder, so the court remanded the case due to the lack of diversity of citizenship.  2022 WL 538968 at *2-3.

On the other hand, the court in *Molina v. American Access Casualty Co.*, 2021 WL 3639790, at *4 (W.D. Tex. Aug. 17, 2021), expressly held – after a careful examination of the

---

[44] Thus, the observations in *Andrews* and *Canyon Supply* that "'a non-diverse defendant who claims to be fraudulently joined may not remove an action to federal court,'" *Canyon Supply*, 2013 WL 2189956, at *1 (quoting *Andrews*, 920 F. Supp. 2d at 703), constitute dicta, at most.  Tellingly, in making their observations, these courts failed to analyze the language of § 1441(b)(2) and relied solely on the general proposition that removal is disfavored.

language of § 1441(b)(2) – that a nondiverse defendant may remove a case alleging it is improperly

joined.  The court stated:

> Although *Texas Brine* focused on whether the in-state defendant had been properly
> served, its analysis applies equally to the requirement that the in-state defendant be
> "properly joined."  Nothing in the statute appears to prohibit removal by a forum-
> defendant who asserts that it has been improperly joined to the action.  Plaintiff has
> failed to identify – and the Court has been unable to locate – any cases that were
> remanded to state court on this basis. "The plain-language reading of the forum-
> defendant rule as applied in this case does not justify a court's attempt to revise the
> statute." *Texas Brine*, 955 F.3d at 487.  Accordingly, the Court concludes that A-
> Max's removal of this action on the basis of its own improper joinder was not barred
> by the forum defendant rule.

The Court agrees with the *Molina* court that nothing in § 1441(b)(2) prohibits a forum defendant

like Walker from removing an action based on his own improper joinder.  Accordingly, remand

on this ground is not appropriate.

> b.   *All properly joined and served defendants timely filed consents to the removal.*

As noted above, the Fifth Circuit requires either that each properly joined and served

defendant join in the notice of removal or that there be a "timely filed written indication from each

served defendant, or from some person or entity purporting to formally act on its behalf in this

respect and to have authority to do so, that it has actually consented to such action." *Getty Oil*,

841 F.2d at 1262.  It is true, as Plaintiffs emphasize, "that private emails between counsel are

insufficient to constitute written consent as they fail to put either the Court or the plaintiff on

notice." *Taco Tico of New Orleans, Inc. v. Argonaut Great Cent. Cent. Ins. Co.*, 2009 WL

2160436, at *2 (E.D. La. Jul. 16, 2009) (citing *Johnson v. Health Bilal*, 2009 WL 981696, at *2

(E.D. La. 2009), and *Marshall v. Air Liquide-Big Three, Inc.*, 2006 WL 286011, at *3 (E.D. La.

2006)).

Here, Walker relies on the emails sent to his counsel from counsel for co-defendants

Lancer, B3, Brian Davis, Kirksey, Ontime, Mohave, Prime Insurance, and Great American,

indicating their consent to removal.  Plaintiffs argue that these emails are insufficient.  The Court disagrees.  Because Walker attached these emails to his notice of removal,[45] they are not the kind of "private emails" courts hold to be insufficient but, instead, the emails – as timely and publicly filed written indications of consent from each served defendant – plainly put the Court and Plaintiffs on notice of these defendants' consent to removal.

## IV.      CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the Plaintiffs' motion to remand (R. Doc. 8) is DENIED.

IT IS FURTHER ORDERED that all claims against defendants Justin Walker, Michael Davis, Murzuka Afrida, Renee Mota, and Germaine White are dismissed without prejudice.

New Orleans, Louisiana, this 18th day of October, 2023.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[45] R. Doc. 2-5.