UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TAMEICA BAKER, *et al*.                                    CIVIL ACTION

VERSUS                                                     NO. 23-3991

AMAZON LOGISTICS, INC., *et al.*                           SECTION M (2)

## ORDER & REASONS

Before the Court is the motion of defendants Amazon Logistics, Inc. and Amazon.com,
Inc. (together, "Amazon") for transfer to a more convenient forum pursuant to 28 U.S.C.
§ 1404(a).[1]  Plaintiffs Tameica Baker, Alrick Baker, Jr., Kalila Baker,[2] and Shushana Edwards[3]
(collectively, "Plaintiffs") respond in opposition,[4] and Amazon replies in further support of its
motion.[5]  Having considered the parties' memoranda, the record, and the applicable law, the Court
issues this Order & Reasons denying the motion.

## I.    BACKGROUND

This matter arises out of a two-vehicle accident resulting in the death of Alrick Baker.  On
June 5, 2022, while Baker was driving an 18-wheeler on Interstate 10 through Biloxi, Mississippi,
his truck made contact with an Amazon tractor-trailer, left the roadway, and crashed into a tree.
The Amazon trailer was being hauled by defendant Cynthia Kirksey, who had retrieved it from an
Amazon facility in New Orleans, Louisiana, and was traveling east toward Alabama.[6]

---

[1] R. Doc. 132.
[2] Tameica Baker, Alrick Baker, Jr., and Kalila Baker appear individually and on behalf of the decedent, Alrick Baker, who was Tameica's husband and Alrick, Jr. and Kalila's father.
[3] Shushana Edwards brings claims on behalf of her minor children, who are also Alrick Baker's children.
[4] R. Doc. 135.
[5] R. Doc. 136.
[6] R. Docs. 2-4 at 5-8; 132-1 at 1-2.

Plaintiffs initially brought this action for wrongful death and survival damages in state court in May of 2023.[7]  It was removed to this Court in August of 2023.[8]  This case was originally set to go to trial on March 3, 2025,[9] but trial was continued at Amazon's request to November 3, 2025, following significant discovery practice and the resolution of several preliminary motions and numerous discovery disputes, including the extension of an expert disclosure deadline.[10]  Amazon now asks the Court to transfer this case to the Southern District of Mississippi.[11]

## II.    PENDING MOTION

In its motion for transfer, Amazon argues that the *Gilbert* factors[12] weigh in favor of transferring this case to the Southern District of Mississippi.  First, because the accident occurred in Mississippi, Amazon argues that all relevant evidence "including the vehicles, investigating officers, emergency responders, and paramedics" are located there.[13]  Amazon next contends that this Court lacks subpoena power over "most – if not all – of the key witnesses in this suit" under Rule 45(c) of the Federal Rules of Civil Procedure, because they "reside more than 100 miles from New Orleans," whereas the Southern District of Mississippi "likely" has subpoena power over those witnesses.[14]  Amazon also asserts that the costs to the parties and witnesses of attending trial in this district would be "significantly higher," as "the majority of witnesses reside in Mississippi, Alabama, and Florida."[15]

As for the public interest factors, Amazon contends that the Southern District of Mississippi "has significantly more bandwidth for this matter" and the case would be "likely to

---

[7] R. Doc. 2-4.
[8] R. Doc. 2.
[9] R. Doc. 46.
[10] R. Docs. 111; 115.
[11] R. Doc. 132 at 1.
[12] *See* discussion of *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), *infra* Section III(A).
[13] R. Doc. 132-1 at 4.
[14] *Id.* at 5.
[15] *Id.* at 6.

proceed to trial more quickly" there.[16]   Amazon also argues that Louisiana residents have no interest in this case, whereas Mississippi residents have a strong local interest in a case concerning "a deadly motor vehicle crash occurring in their state."[17]   Lastly, Amazon posits that "Plaintiffs have filed this case in Louisiana to escape Mississippi's cap on non-economic damages, which Louisiana does not have" and argues that transferring the case to Mississippi would thus avoid any conflict of laws arising from this difference in Louisiana and Mississippi law.[18]

In their opposition to Amazon's motion, Plaintiffs first contend that the motion is inexcusably delayed and prejudicial to Plaintiffs because Amazon has been aware of the facts underlying its transfer motion since the beginning of this case but "strategically waited" until now to file it.[19]   While Plaintiffs maintain that "[t]he timing of the motion alone should render it improper," they also refute Amazon's argument that the *Gilbert* factors weigh in favor of transfer.[20]   In particular, Plaintiffs point out that all of the evidence is not located in Mississippi, as Amazon insists, noting that the vehicles have been "disposed of" and data and photographs from inspections of the vehicles and crash site are in the possession of counsel in this district.[21]   Plaintiffs also contend that "Amazon has completely failed to identify any specific witnesses who reside over 100 miles from the Eastern District of Louisiana," and  the Biloxi Police Department, where "the lead investigators of the crash" work, is within 100 miles of this Court.[22]   Plaintiffs then assert that plaintiff Tameica Baker, a "key witness," resides in this district and that the other plaintiffs, who reside in Florida, have plans to stay with family in New Orleans to attend the trial.[23]   Plaintiffs

---

[16] *Id.* at 7.
[17] *Id.* at 8.
[18] *Id.* at 8-9 (quote at 8).
[19] R. Doc. 135 at 4-6 (quote at 6).
[20] *Id.* at 4.
[21] *Id.* at 9.
[22] *Id.* at 10.
[23] *Id.* at 12.

argue that their staying in a hotel in Mississippi for the duration of the trial would be a greater burden to them than the Biloxi witnesses' traveling to New Orleans to testify, as they could drive an hour and forty minutes to and from New Orleans in the same day, avoiding the need for lodging.[24]

Plaintiffs dispute Amazon's court-congestion argument, which they say is "the most speculative" of the *Gilbert* factors,[25] and urge that transferring the case at this juncture would disturb the November 2025 trial date and waste judicial resources.[26] Plaintiffs next argue that Louisiana residents have a local interest in this case because some of the alleged "bad acts of Amazon" occurred at the Amazon facility in Louisiana, and the decedent was a resident of the Eastern District of Louisiana, as is his widow.[27] Because Plaintiffs argue that Louisiana law should apply to this case, they contend that this Court would be more familiar with the governing law than a court sitting in Mississippi.[28] Plaintiffs finally argue that Louisiana courts have already rejected Amazon's conflict-of-law argument by holding that the domicile of the tort victim, not the location of the tort, should govern, though Plaintiffs reiterate that they also allege that certain negligent acts took place in Louisiana.[29]

In its reply, Amazon first notes that, unlike motions for transfer based on improper venue under § 1406, motions to transfer for convenience under § 1404(a) cannot be waived by a party's failure to object to the plaintiff's chosen venue.[30] Amazon then contends that the timing of its motion was a result of recent discovery (specifically, depositions) which, in their view, eliminates

---

[24] *Id.*
[25] *Id.* at 13-14 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009)).
[26] *Id.* at 14.
[27] *Id.* at 14-15 (quote at 15).
[28] *Id.*
[29] *Id.* at 16.
[30] R. Doc. 136 at 1-2.

"the only substantive nexus between the issues in this litigation and Louisiana."[31]  Amazon next asserts that Plaintiffs' position that transfer would cause prejudicial delay "should be viewed with skepticism"[32] because Plaintiffs "essentially … request[ed]" a continuance in December.[33]

In response to Plaintiffs' arguments on the *Gilbert* factors, Amazon first reiterates its contention that "the bulk of the evidence in this case is located in Mississippi or states east of Mississippi."[34]  Amazon argues that "Plaintiffs claim that no evidence remains in Mississippi is misleading and without merit" because it is unclear from the deposition testimony cited by Plaintiffs "how the vehicles were 'disposed of' … or where the remains may be located currently."[35]  Amazon also argues that "evidence possessed by [party witnesses] – who all reside in either Alabama or Georgia – would be located in those states, which are nearer to Mississippi than to Louisiana."[36]  Amazon asserts that "the overwhelming majority of [Alrick Baker's] post-accident medical treatment" took pace in Mobile, Alabama,[37] which is within the subpoena power of the Southern District of Mississippi but not that of this Court, and observes that the witnesses who treated Baker in Mobile "could hardly be blamed for being reluctant to testify," without identifying any such witness or explaining why.[38]  Amazon then argues that Plaintiffs' assertions that the Biloxi witnesses can travel to and from New Orleans in the same day, eliminating their

---

[31] *Id.* at 3.

[32] *Id.* at 3-4.

[33] Due to a dispute over the scheduling of Amazon's corporate deposition, Plaintiffs moved for a 30-day extension of their expert report deadline (R. Doc. 101), which Amazon opposed (R. Doc. 110).  The Court granted the extension and ordered a brief continuance (R. Doc. 111), per Amazon's suggestion.  R. Doc. 110 at 1 ("[T]he more logical approach would be … for the Court to continue the trial and issue a new scheduling order.").  That the December scheduling conference (R. Doc. 115) yielded a longer continuance than the Court anticipated was the result of scheduling conflicts of the parties and their counsel.

[34] R. Doc. 136 at 5.

[35] *Id.* at 4.

[36] *Id.* at 5.

[37] *Id.*

[38] *Id.* at 6.

need for lodging in New Orleans, while Plaintiffs would require lodging in Gulfport to attend trial there "cannot be reconciled."[39]

Amazon further contends that, instead of "identify[ing] … practical problems arising from the transfer of this case[,] Plaintiffs attempt to artificially narrow the scope of the issues in this case to the 'negligence of Amazon at its New Orleans facility.'"[40] Amazon rejects Plaintiffs' supposed attempt by asserting that "undisputed evidence now establishes that" Amazon did not act negligently at the New Orleans facility, so "the only remaining claims in this case arise from a traffic accident allegedly caused by Cynthia Kirksey's negligent driving – in Mississippi."[41] Next, Amazon posits that a November trial date would not be disturbed because "cases in the Southern District of Mississippi take approximately 9.5 months to be adjudicated."[42] Amazon asserts that "Plaintiffs misunderstand the local interest factor," which focuses on the relationship of the community adjudicating the case with the events at issue, rather than the relationships between the parties and either venue.[43] Amazon again contends that "Plaintiffs' sole Louisiana-based claim has no basis in fact," meaning, it says, Mississippi law should govern the case.[44] And, repeats Amazon, there is a "glaring conflict of law in this case" because Mississippi imposes a ceiling on non-economic damages and Louisiana does not.[45]

## III.    LAW & ANALYSIS

### A.  Legal Standard

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it

---

[39] *Id.*
[40] *Id.* at 7.
[41] *Id.* at 8.
[42] *Id.*
[43] *Id.*
[44] *Id.* at 9.
[45] *Id.* at 10.

might have been brought." 28 U.S.C. § 1404(a). A defendant seeking transfer must show "good cause," meaning the defendant "must satisfy the statutory requirements and clearly demonstrate that a transfer is 'for the convenience of parties and witnesses, in the interest of justice.'" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). "Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.*

Courts apply the private and public interest factors originally set out in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), when evaluating whether another district could be clearly more convenient. *In re Volkswagen*, 545 F.3d at 315. As the Fifth Circuit has explained:

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*Id.* (quotations, internal citation, and alteration omitted). These factors are not necessarily exhaustive or exclusive and none has dispositive weight. *Id.*

While § 1404(a) does not set a deadline for the filing of motions for transfer, courts have considered whether a transfer motion was filed "'with reasonable promptness.'" *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022) (quoting *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989)). *See also Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 245 (5th Cir. 2017) ("On the question of convenience, timing is obviously salient."). Courts may consider the timeliness of a transfer motion separate and apart from the *Gilbert* factors or under the catchall fourth private interest factor. *Compare In re Planned Parenthood*, 52 F.4th at 630 ("We have also emphasized that the *Gilbert* factors 'are not necessarily exhaustive or

exclusive.'  Pertinent here, 'courts have considered a party's delay in denying a motion to transfer.'" (internal citation omitted) (first quoting *In re Volkswagen*, 545 F.3d at 315, and then quoting *Peteet*, 868 F.2d at 1436)), *and G.K. v. D.M.*, 2022 WL 16712881, at *2 (E.D. La. Nov. 4, 2022) (denying a venue transfer upon finding movant failed to act with "reasonable promptness" in bringing the motion), *with In re TikTok, Inc.*, 85 F.4th 352, 362 (5th Cir. 2023) ("The fourth [private interest] factor [under *Gilbert*] considers 'all other practical problems that make trial of a case easy, expeditious and inexpensive.' ... This factor weighs against transfer when petitioners 'inexcusably delayed' bringing their motion until 'late in the litigation.'" (internal citation omitted) (first quoting *In re Volkswagen*, 545 F.3d at 315, and then quoting *In re Planned Parenthood*, 52 F.4th at 631)).

## B.  Analysis

### 1.  Timeliness

The Court agrees with Plaintiffs that Amazon's delay in moving for transfer alone warrants denial.  This case has been pending for nearly 21 months.  Amazon's motion does not provide any acceptable rationale why, over a year after this Court denied remand of this action,[46] and after numerous motions and discovery disputes have been resolved by this Court, it now seeks transfer. In its reply, Amazon offers the following explanation:

> [I]t was not until late 2023 – when jurisdiction in this court was established – that Amazon could have filed a motion to transfer.  It then took a further six months (until April 2024) for Plaintiffs to perfect service on all named defendants and for those defendants to appear – before which time, Amazon could not conduct the discovery that underpins its motion to transfer.[47]

---

[46] The Court denied Plaintiffs' motion to remand their action to state court on October 18, 2023, fourteen months before Amazon filed its motion to transfer.  R. Doc. 18.

[47] R. Doc. 136 at 2-3.

In conclusory fashion, Amazon pronounces that this discovery – specifically, deposition testimony – establishes that "the Amazon trailer in no way caused or contributed to this accident"[48] and that "Amazon['s having] released its trailer to a known representative of the entity with whom Amazon contracted to transport the trailer"[49] vitiates "the only substantive nexus between the issues in this litigation and Louisiana."[50]  But Plaintiffs nowhere concede that these matters are established or beyond dispute.

In short, the arguments advanced in Amazon's motion to transfer are based on the location of the accident in Biloxi and the domiciles of fact witnesses and parties in Biloxi or states east of Mississippi.  But these facts were known to Amazon prior to deposition discovery.  Amazon has been aware of the locations of the accident and the parties' domiciles – and thus, the probable locations of much of the key witnesses and evidence – since the beginning of this case,[51] and it could have moved for transfer based on that information, by its own admission,[52] at least as early as when jurisdiction was established in this case over a year ago.  That Amazon has developed deposition testimony it believes undermines the efficacy of Plaintiffs' negligent entrustment claim – with its connection to Louisiana – does not alter this calculus, especially since Plaintiffs dispute the conclusion Amazon draws from the discovery.  Thus, Amazon's delay in bringing its motion, by itself, weighs heavily against transfer.  *See In re Planned Parenthood*, 52 F.4th at 631 (affirming that transfer motion filed "*seven months* after [the] case was unsealed and months into the discovery period" was "inexcusably delayed" (emphasis in original)); *Peteet*, 868 F.2d at 1436 (upholding denial of transfer motion filed 18 months after remand to district court because, *inter*

---

[48] *Id.* at 3 (emphasis omitted).

[49] *Id.* at 8.

[50] *Id.* at 3.

[51] *See* R. Docs. 2-4 at 5-9; 2-2.

[52] R. Doc. 136 at 2 ("[I]t was not until late 2023 – when jurisdiction in this court was established – that Amazon could have filed a motion to transfer.").

*alia,* transfer "would have caused yet another delay in this protracted litigation"); *Aduli v. J.M. Smucker Co.*, 2024 WL 3594306, at *7 (E.D. La. July 30, 2024) (finding that granting transfer one year after case was filed would "undoubtedly cause further delay" and prejudice plaintiffs).

Consequently, Amazon's untimeliness in bringing the motion is a sufficient basis, on its own, to warrant denial of the motion. Nevertheless, the Court also concludes that the *Gilbert* factors weigh against transferring this case.

### 2. *Gilbert* Factors

#### a. Private Interest Factors

##### i. Access to Sources of Proof

The first of the four private factors is access to sources of proof. The Fifth Circuit has clarified:

> The first factor focuses on the location of documents and physical evidence relating to the case. The question is *relative* ease of access, not *absolute* ease of access. That means this factor weighs in favor of transfer where the current district lacks any evidence relating to the case. But when the vast majority of the evidence is electronic, and therefore equally accessible in either forum, this factor bears less strongly on the transfer analysis.

*In re TikTok*, 85 F.4th at 358 (emphasis in original; quotations and alterations omitted). The only physical evidence Amazon asserts is located in Mississippi are the vehicles,[53] but Plaintiffs dispute this, relying on a declaration by Keith Helton, manager of K&K Towing in Gulfport, which states that the vehicles were "cut into sections to haul off" from the crash site and what remained of them was "disposed of" in September of 2024.[54] Amazon questions the meaning of "disposed of" and the location of any remains of the vehicles, if not destroyed,[55] but it is Amazon's burden to identify

---

[53] R. Doc. 132-1 at 4 ("[A]ll evidence related to this Incident is located in Mississippi, including the vehicles, investigating officers, emergency responders, and paramedics who attempted to save Mr. Baker's life.").
[54] R. Doc. 135-5 at 2.
[55] R. Doc. 136 at 4.

specific physical evidence currently located in the Southern District of Mississippi. *See Def. Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir. 2022) ("Regarding the first private interest factor, the movant has the burden to establish good cause, which requires an actual showing of the existence of relevant sources of proof, not merely an expression that some sources likely exist in the prospective forum."). Moreover, Amazon's admitted lack of knowledge of the location of any remains indicates that the parties likely intend to rely on the photographs and data collected from the junk yard, which items are electronically stored and accessible by counsel in this district.[56] *See Pruitt v. Bruce Oakley, Inc.*, 2019 WL 2437182, at *4 (E.D. La. June 11, 2019) ("[A]dvances in technology for document copying and storage makes ease of access to sources to proof a near non-issue."). Therefore, because Amazon has failed to establish that there are specific pieces of physical evidence or documents intended for use at trial that are currently located, or only accessible, in Mississippi, the first private interest factor does not weigh in favor of transfer. *See Dufort v. Aqueos Corp.*, 2020 WL 1953949, at *2 (E.D. La. Apr. 23, 2020) ("[Movant] has also not identified any physical evidence that it intends to use at trial, much less any that would be more conveniently accessed in the [transferee d]istrict. Accordingly, [movant] has not demonstrated that a transfer would result in a more convenient access to sources of proof."). Had Amazon moved for transfer earlier in this case, before the physical evidence had been "disposed of" or electronically stored, this factor might have weighed more heavily in its favor.

### ii. Availability of Compulsory Process

The second private interest factor pertains to the availability of compulsory process to procure the attendance of witnesses. A district court has subpoena power over a person who "resides, is employed, or regularly transacts business in person" within 100 miles of the location

---

[56] Amazon admits that "the evidence in Amazon's possession consists of, and is limited to, digitally stored documents, which can be accessed anywhere." *Id.* at 5.

of the court or within the state in which the court sits.  Fed. R. Civ. P. 45(c)(1).  Amazon asserts

that "most – if not all – of the key witnesses in this suit reside more than 100 miles from New

Orleans."[57]  And while Amazon speculates that the medical professionals who treated Baker in

Mobile may be "reluctant to testify, whether at trial or deposition,"[58] it fails to identify any such

witness who is unwilling to testify.  "[T]he availability of compulsory process 'receives less weight

when it has not been alleged or shown that any witness would be unwilling to testify.'"  *In re*

*Planned Parenthood*, 52 F.4th at 630-31 (quoting *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d

488, 499 (6th Cir. 2016)).  Thus, because Amazon has failed to specifically identify any unwilling

witnesses, this factor does not favor transfer either.

### iii.  Cost of Attendance for Willing Witnesses

The third private interest factor concerns the cost of attendance for willing witnesses.  The

Fifth Circuit uses distance as an analogue for convenience.  "When the distance between an

existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles,

the factor of inconvenience to witnesses increases in direct relationship to the additional distance

to be traveled."  *In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004).  Amazon does not

contend that the Southern District of Mississippi lies more than 100 miles from the Eastern District

of Louisiana.[59]  Nonetheless, it is an "obvious conclusion that it would be more convenient for

these [willing] witnesses to testify" at home.  *Id.* at 205.  Because it seems that most of the potential

non-party witnesses reside in Biloxi or Mobile, this factor weighs in favor of transfer, but only

slightly, given that the Southern District of Mississippi's Southern Division sits less than 100 miles

from this Court, and because Amazon has not identified "key" witnesses for whom traveling to

---

[57] R. Doc. 132-1 at 5.
[58] R. Doc. 136 at 6.
[59] The accident occurred in Biloxi, which falls within the Southern Division of the Southern District of Mississippi.  The Southern Division sits in Gulfport, approximately 80 miles from New Orleans.

this district would be a hardship.  *See G.K.*, 2022 WL 16712881, at *2 ("Defendant vaguely claims that travel is less expensive and more accessible to and from [the transferee forum].  The Court finds Defendant's argument to be conclusory and unpersuasive."); *Hills v. Brinks, Inc.*, 2008 WL 243944, at *6 (E.D. La. Jan. 25, 2008) ("[U]nlike the situation in *In re Volkswagen II* in which defendants submitted affidavits from prospective witnesses on the hardship of traveling to a judicial district to which *no* party had any connection, defendants here have given no indication as to who is necessary as a witness.  Accordingly, the Court also finds that this factor does not weigh in favor of transfer." (emphasis in original)).  These countervailing factors may, in fact, render this factor merely neutral.

### iv.   Other Practical Problems

However, the fourth private interest factor, which encompasses "all other practical problems that make trial of a case easy, expeditious and inexpensive," *In re Volkswagen*, 545 F.3d at 315, weighs heavily against transfer in this case due to Amazon filing its motion to transfer over a year after jurisdiction was established.  "This factor weighs against transfer when petitioners 'inexcusably delayed' bringing their motion until 'late in the litigation.'  But 'garden-variety delay associated with transfer is not to be taken into consideration when' weighing this factor." *In re TikTok*, 85 F.4th at 362 (internal citations omitted) (first quoting *In re Planned Parenthood*, 52 F.4th at 631, and then quoting *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013)).  The work a court has put into a case distinguishes it from one involving "garden-variety delay associated with transfer."  *See Ganpat v. E. Pac. Shipping, PTE. LTD*, 581 F. Supp. 3d 773, 793-94 (E.D. La. 2022) ("The timing of [petitioner]'s motion renders a dismissal on forum non conveniens grounds itself *inconvenient* due to the length of time and the amount of work already expended by the Court in this case." (emphasis in original)).

A court in this district recently analyzed this factor under similar circumstances:

> [Petitioner] waited until June 4, 2024, almost exactly a year [after suit was filed], to file the instant Motion to Transfer. [Petitioner] has given absolutely no explanation or reason whatsoever for the late filing of this motion, likely because none exists. The parties have been aware of [petitioner's] corporate home, as well as the issues with the manufacturing plant in Lexington, Kentucky, since well before the filing of this lawsuit. Further, [petitioner] has been aware that Plaintiffs have tied their claims to the issues at the Lexington, Kentucky plant since the filing of the lawsuit in June 2023. … Now, a year after the filing of the lawsuit, a second trial date is set – a trial date which has already been continued once by joint motion. Discovery is ongoing. Granting a transfer at this time would undoubtedly cause further delay. … Accordingly, this factor weighs against transfer.

*Aduli*, 2024 WL 3594306, at *7. Amazon waited well over a year (21 months), even longer than the petitioner in *Aduli*, to file its motion and likewise did so without adequate explanation. As true in *Aduli*, Amazon has been aware that the vehicular crash occurred in Biloxi since the outset of this case. And, as in *Aduli*, this case has been set for a second trial date and discovery is ongoing. To be sure, even a cursory review of the case docket reveals beyond cavil the significant court resources the parties have asked the Eastern District of Louisiana to expend on this matter. Accordingly, this factor weighs against transfer. *See also G.K.*, 2022 WL 16712881, at *2 ("Defendant failed to act with 'reasonable promptness' in bringing th[e m]otion [to transfer]. This case was initially removed to this Court in December 2021. Since then, the parties have engaged in extensive motion practice, including discovery-related and dispositive motions, resulting in multiple rulings impacting the course of this litigation.").

### b. Public Interest Factors

#### i. Court Congestion

The first public interest factor, which concerns court congestion, is said to be the most "speculative" of the *Gilbert* factors. *See In re Clarke*, 94 F.4th 502, 515-16 (5th Cir. 2024). Thus, while the statistics cited by Amazon show that this district has a larger caseload and takes slightly

longer to bring cases to trial than the Southern District of Mississippi, this factor is neutral because an estimate of court congestion, "at its core, is an uninformed guess," and gives essentially no weight to a plaintiff's choice of forum and role as master of the complaint. *Id.*; *see also Aduli*, 2024 WL 3594306, at *7 ("The statistics speak for themselves – this Court has a larger caseload. Accordingly, the Court determines that this factor is neutral, or weighs slightly in favor of transfer.").

### ii. Local Interest

The second public interest factor is "the local interest in having localized interests decided at home," *In re Volkswagen*, 545 F.3d at 315, and has been explained by the Fifth Circuit this way:

> [Courts] do not consider the parties' connections to the venue because the local interest analysis is a public interest factor. Accordingly, the local-interest inquiry is concerned with the interest of *non-party citizens* in adjudicating the case. Considerations such as the location of the injury, witnesses, and the plaintiff's residence, are useful proxies for determining what local interests exist in each venue.

*In re Clarke*, 94 F.4th at 511 (emphasis in original; footnote, quotation, internal citation, and alteration omitted). While the parties' connections to each venue are not considered for their own sake under this public interest factor, the plaintiff's residence is taken into account. *Id.* The accident victim, Alrick Baker, was domiciled in the Eastern District of Louisiana, as is his widow, plaintiff Tameica Baker, who alleges to have suffered wrongful death damages while residing here.[60] Thus, the Bakers' residence in this district is not irrelevant, as Amazon suggests.[61] While the accident occurred in Biloxi, emergency responders from Biloxi responded to it, and drivers traveling through Biloxi on Interstate 10 were temporarily inconvenienced by that response, a

---

[60] R. Doc. 135 at 4, 12, 16.
[61] R. Doc. 136 at 8. *Contra In re Volkswagen*, 545 F.3d at 317-18 (observing, in partial support of the court's holding that the local interest factor weighed in favor of transfer, that "two of the three plaintiffs live in the [transferee district] (the third lives in Kansas), not one of the plaintiffs has ever lived in the [transferor district], and the third-party defendant lives in the [transferee district]"). No party to this case is domiciled in Mississippi. *See* R. Doc. 2-2.

Louisiana resident was killed in the accident.  Non-party citizens of this district certainly have a stake in the adjudication of a case involving the death of their fellow citizen and in seeing that his widow, another fellow citizen, is afforded justice for any wrongdoing giving rise to the harm she has suffered.

In this regard, Plaintiffs specifically allege that Amazon negligently permitted Kirksey to retrieve one of Amazon's trailers at its New Orleans facility.[62]  Amazon asserts that "deposition of Amazon's corporate representative disposes of Plaintiffs' only Louisiana-based claim – that Amazon negligently released its trailer to an employee of a carrier with whom Amazon had not contracted."[63]  But this bald assertion is insufficient, at this juncture anyway, to eliminate Plaintiffs' claim regarding Amazon's conduct at its New Orleans facility from the scope of this analysis.  This Court has not disposed of this claim and unless and until it does, there are "significant connections between [this district] and the events that gave rise to a suit." *In re TikTok, Inc.*, 85 F.4th at 364 (quotation omitted).  It cannot be said that the "transferor district has 'no relevant factual connection to the' dispute." *Id.* at 365 (quoting *In re Volkswagen*, 545 F.3d at 318).  Accordingly, this factor does not weigh in favor of transfer.

### iii.  Familiarity with Governing Law

The third public interest factor evaluates the relative familiarity of the transferor and transferee courts with the law that will govern the case.  Amazon concedes that "this is a straightforward tort case arising from a motor vehicle accident."[64]  Accordingly, this factor is neutral.  *See Hills*, 2008 WL 243944, at *7 ("Tort law is not rocket science, and defendants have not shown that Texas tort law is so different from other jurisdictions' laws that this [Louisiana

---

[62] R. Doc. 2-4 at 23-25.
[63] R. Doc. 136 at 8-9.
[64] R. Doc. 132-1 at 8.

federal] Court would struggle to apply it. This Court has applied the laws of other states in numerous other diversity suits, including personal injury cases. There is no reason that it would be unable to do so in this case. Accordingly, this factor is neutral.").

### iv. Avoidance of Conflicts of Law or Application of Foreign Law

The final public interest factor considers whether transfer would "avoid[] … unnecessary problems of conflict of laws or in the application of foreign law." *In re Volkswagen*, 545 F.3d at 315. Amazon argues that transferring this case to the Southern District of Mississippi would avoid "a glaring conflict of law in this case – Mississippi has a $1 million cap on non-economic damages; Louisiana does not."[65] To the extent that Amazon contends that a change in venue under § 1404(a) would result in the application of Mississippi law to this case, it misapprehends the purposes of and effect of § 1404(a). "It is well settled in the Fifth Circuit and elsewhere that 'when the defendant in a diversity suit successfully moves for transfer of venue under § 1404(a), the transferee federal court must apply the [choice-of-law rules] and policy of the transferor state.'" *Knight v. Delta Downs Racetrack, Casino & Hotel*, 2012 WL 4961193, at *2 (W.D. La. Oct. 16, 2012) (quoting *Cowan v. Ford Motor Co.,* 713 F.2d 100, 104 (5th Cir. 1983)). *See also Franco v. Mabe Trucking Co.*, 3 F.4th 788, 793 n.4 (5th Cir. 2021). As the Supreme Court has explained,

> § 1404(a) was not designed to narrow the plaintiff's venue privilege or to defeat the state-law advantages that might accrue from the exercise of this venue privilege but rather the provision was simply to counteract the inconveniences that flowed from the venue statutes by permitting transfer to a convenient federal court. The legislative history of § 1404(a) certainly does not justify the rather startling conclusion that one might 'get a change of law as a bonus for a change of venue.' Indeed, an interpretation accepting such a rule would go far to frustrate the remedial purposes of § 1404(a). … [I]t should be regarded as a federal judicial housekeeping measure, dealing with the placement of litigation in the federal courts and generally intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms.

---

[65] R. Doc. 136 at 10.

*Van Dusen v. Barrack*, 376 U.S. 612, 635-37 (1964) (footnotes omitted).  Thus, if the Court were to transfer this case, the Southern District of Mississippi would apply Louisiana's choice-of-law rules, such that the governing substantive law would be the same as if the case were not transferred.

Louisiana analyzes the applicable law for each issue, such that the laws of more than one state may apply to different issues in the same suit, a practice called *dépeçage*.  *See* La. Civ. Code art. 3515, revision comment (d) ("When a conflict exists with regard to more than one issue, each issue should be analyzed separately, since each may implicate different states, or may bring into play different policies of these states.").  *See also* RESTATEMENT (THIRD) OF CONFLICT OF LAWS § 5.02 (AM. L. INST., Tentative Draft No. 3, 2022).  Because Plaintiffs allege that Amazon negligently authorized Kirksey to take the trailer in Louisiana, application of Louisiana's conflict-of-laws principles may result in the application of Louisiana law to this claim.  Likewise, the "glaring conflict of law" identified by Amazon may result in the application of Louisiana law to the issue of damages.[66]  Thus, Mississippi's non-economic damages cap does not present the type of "problem[] of conflict of laws" contemplated by this factor.  If anything, the inevitable application of Louisiana's choice-of-law rules tips the scales against transfer.  *See, e.g., Oien v. Thompson*, 824 F. Supp. 2d 898, 907 (D. Minn. 2010) ("A Court will eventually need to determine whether Minnesota or North Dakota law governs plaintiffs' claim.  Regardless of whether this Court or the federal court in Fargo makes that determination, any choice-of-law issues will be resolved under Minnesota law. ... Although there is an issue regarding whether Minnesota's Dram Shop statute applies to the facts of this case, this issue is not a 'conflict of law issue' that would warrant transfer to the District of North Dakota 'in the interest of justice.'  Because either court

---

[66] However, even if the Court were to determine that Mississippi law applies to both liability and damages, because "this is a straightforward tort case arising from a motor vehicle accident," R. Doc. 132-1 at 8, this Court would be perfectly capable of applying Mississippi tort law and its statutory limitation on non-economic damages.

would apply Minnesota law to resolve this issue, this factor weighs slightly against transfer." (alteration and internal citations omitted)).

Amazon's charge that Plaintiffs' selection of this district is "a transparent example of forum shopping"[67] falls flat. "Plaintiffs are permitted to engage in a certain amount of forum-shopping. Defendants can protect themselves from the most blatant forum-shopping by invoking 28 U.S.C. § 1404(a)." *In re TikTok, Inc.*, 85 F.4th at 357 (internal citation omitted). The Plaintiffs' selection of the district where plaintiff Tameica Baker is at home (as was also true for the accident victim, Alrick Baker) is not an example of inappropriate forum-shopping. *See Hills*, 2008 WL 243944, at *4 ("The Court also notes at the outset that this is not a case in which plaintiff has chosen a forum with which he has no connection, which might raise the specter of improper forum shopping. The convenience of the forum to the parties is a statutory consideration. Plaintiff has made an uncontroverted showing the defendants conduct business in the Eastern District of Louisiana, plaintiff resides in the chosen forum, and clearly plaintiff's home forum is more convenient for the plaintiff." (internal citations omitted)).

*        *        *        *

In sum, then, when the *Gilbert* factors are considered as a whole, even if Amazon's motion for transfer had been timely, Amazon has not demonstrated that the Southern District of Mississippi is a "clearly more convenient" forum, and "the [Plaintiffs'] choice should be respected." *In re Volkswagen*, 545 F.3d at 315.

---

[67] R. Doc. 136 at 10.

IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Amazon's motion to change venue under 28 U.S.C. § 1404(a) (R.

Doc. 132) is DENIED.

New Orleans, Louisiana, this 11th day of February, 2025.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE